# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 23, 2022[*]
Decided July 1, 2022

**Before**

DIANE S. SYKES, *Chief Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 22-1016

| | |
|---|---|
| RICHARD ANTHONY JOHNSON, <br> *Plaintiff-Appellant,* | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 20-cv-496-jdp |
| JACOB GULLICKSON, et al., <br> *Defendants-Appellees.* | James D. Peterson, <br> *Chief Judge.* |

## O R D E R

Richard Johnson sued police officers alleging that they violated his rights under the Fourth Amendment by pointing a gun at him unprovoked while they searched his home pursuant to a warrant. He also alleged that the warrant was not supported by probable cause and that the officers failed to show him a copy of it during the search. The district judge dismissed some of Johnson's claims and eventually granted summary judgment for the officers, ruling that qualified immunity insulated them from the

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

excessive-force claim and that nothing unlawful occurred in obtaining and executing the warrant. We affirm.

We take the following facts from the summary-judgment record and view them in the light most favorable to Johnson, drawing reasonable inferences in his favor. *See Young v. City of Chicago*, 987 F.3d 641, 643 (7th Cir. 2021). In 2017 Jacob Gullickson, who was then a detective with the Eau Claire, Wisconsin Police Department, applied for a warrant to search Johnson's home, which was rented by his roommate Jeffrey Rodrick. Detective Gullickson attested that based on witness reports, including victims' statements, officers suspected Johnson of several crimes, including possession of cocaine with intent to distribute, child enticement, and sexual assault of a child. A Wisconsin circuit court judge issued the warrant.

On the same day, Detective Gullickson and other officers executed the search warrant. They brought a battering ram, but Johnson opened the door when they knocked. They entered the home with their weapons unholstered. Detective Gullickson and another officer pointed their weapons (at least one gun and either another gun or an electroshock device) at Johnson and told him to "shut the eff up" until he was handcuffed. By Johnson's account this lasted about five minutes, and "after [the officers] handcuffed [him] and took [him] out of the apartment, nobody else pointed a gun at [him]." Johnson asked for a copy of the search warrant, but one was not provided, and during the ensuing prosecution, the warrant was sealed. Detective Gullickson attested that he left the warrant on the kitchen table, but Johnson submitted photos to show that there was no kitchen table. When the officers left the apartment, they were unable to lock the door because they did not have a key, and the residence was later burglarized.

Johnson was convicted by a jury of sexual assault of a minor, child enticement, and manufacturing or delivering THC (the psychoactive compound in cannabis); the jury acquitted him of an offense relating to cocaine. He is currently serving his prison sentence while he seeks review in the Wisconsin Supreme Court.

Johnson sued the officers who searched his home under 42 U.S.C. § 1983. In his amended complaint, he alleged that the officers violated his rights under the Fourth Amendment because they (1) executed a warrant based on "inconsistent" statements and lacking probable cause; (2) left the door to his residence unlocked, which led to the burglary; (3) refused to show him the warrant during the search and conspired to have it sealed afterward; and (4) pointed guns at him during the search even though he was

cooperating. He also alleged that the officers targeted him on account of his race—he is black—in violation of his right to equal protection under the Fourteenth Amendment. The judge screened the complaint under 28 U.S.C. § 1915A. As relevant to this appeal, the judge dismissed claims that the search warrant was not supported by probable cause, that sealing the warrant violated Johnson's rights, and that the investigation and arrest were discriminatory.

The defendants moved for summary judgment on the two remaining claims, and the judge granted the motion. First, regarding the excessive-force claim, the judge concluded that pointing weapons at Johnson did not violate a clearly established right and the officers were therefore entitled to qualified immunity. Second, the judge explained that officers are not required to have a copy of the warrant with them while they search, so failing to show the warrant was not unreasonable under the Fourth Amendment.

On appeal Johnson principally challenges the decision in favor of the defendants at summary judgment, a ruling that we review de novo. *See Young*, 987 F.3d at 643. He contends that the police officers violated a clearly established right by pointing weapons at him even though he was cooperating with the search and they had no reason to believe that he was violent. Under the doctrine of qualified immunity, officers are immune from suit unless they violate a constitutional right that was clearly established at the time of the alleged violation and "every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quotation marks omitted). Here, we agree with the judge that Johnson did not have a clearly established right to not have weapons pointed at him when officers arrived to execute the search warrant. Once officers raised the qualified-immunity defense, Johnson had the burden to identify legal decisions that show the claimed right was clearly established, and he points us to none. *See Cibulka v. City of Madison*, 992 F.3d 633, 639 (7th Cir. 2021).

Indeed, caselaw suggests that Johnson had no right to be free from a threat of deadly force under the circumstances here. An excessive-force claim requires an assessment of whether the officer's use of force was objectively reasonable under the circumstances. *Graham v. Connor*, 490 U.S. 386, 395 (1989). "[W]hen there *is* reason to fear danger" based on factors like the nature of the crime, the threat to safety, and the resistance of the suspect, police officers may have cause to point their guns at citizens. *Baird v. Renbarger*, 576 F.3d 340, 344, 346–47 (7th Cir. 2009) (concluding that a jury could find a violation of a clearly established right "when there was no hint of danger"). Drug

trafficking is a crime often associated with violence. *Id.* at 344. Further, based on the circumstances of the search, it is reasonable for officers to approach a criminal suspect with some precaution. *See Archer v. Chisholm*, 870 F.3d 603, 617–18 (7th Cir. 2017) (explaining that the conditions of the search, including "the presence of a battering ram (that was not used) [and] the officers[] entering the home with 'guns drawn,'" were not unreasonable). Here, two officers pointed guns at Johnson for about five minutes—only from the time they arrived until he was secured in handcuffs. Though they used vulgar language and told him to shut up, "the Supreme Court has never held that the Fourth Amendment protects against" rude behavior. *Id.* at 618.

Johnson next argues that the evidence could support a finding that the officers violated his Fourth Amendment rights by failing to show him the search warrant. He points to the dispute about whether Detective Gullickson left a copy of the warrant on a table, but that is immaterial. The officers were not required under the Fourth Amendment to have the warrant with them during the search. *See United States v. Cazares-Olivas*, 515 F.3d 726, 729 (7th Cir. 2008). Thus, as the judge logically inferred, the officers could not be obligated to produce it on demand.

We also understand Johnson to challenge the screening dismissal of his claims that there was no probable cause for a search warrant, that sealing the search warrant after his arrest violated his rights, and that officers violated his right to equal protection by targeting him based on his race. But he merely repeats his allegations without explaining how they add up to constitutional claims, therefore waiving arguments that dismissal was improper. *See Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1062–63 (7th Cir. 2020).

In any case, we see no problem with the dismissal of those claims. First, Johnson failed to identify any falsehoods or inconsistencies in the victims' statements that would make it unreasonable for police officers to rely upon them in the search-warrant application. *See Sow v. Fortville Police Dep't*, 636 F.3d 293, 302 (7th Cir. 2011). Second, a state judge—not the police officers—sealed the warrant, and liability under § 1983 requires the defendants' personal involvement. *See Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017). Adding the conclusory allegation that the officers "conspired" to seal it does not make a claim against them plausible. Third, to state a claim for an equal-protection violation, Johnson needed to plausibly allege that the officers intentionally discriminated against him based on his race, but it is evident from the complaint that the officers obtained a warrant based on specific, individualized

information that Johnson was involved in serious criminal activity. *See Sow*, 636 F.3d at 303.

We have considered Johnson's other arguments, including those about parties dismissed at screening and his attempted joinder of his roommate, and none has merit.

AFFIRMED